NATIONAL EQUITABLE SOC. OF BELTON
v. CAMP et al. (No. 1584.)

(Court of Civil Appeals of Texas. Texarkana.
March 8, 1916. Rehearing Denied
March 16, 1916.)

1. FRAUD ⊂⊐20—KNOWLEDGE OF FACTS.

Plaintiff, who before signing an application for a loan contract with defendant loan society read and studied its terms, and knew that they stated that its agent had no authority to change the terms of the written contract or make any oral agreement not in the written contract, and that the agent's statement that she could get a loan within 30 days, and not over 60 days, was not authorized, if conflicting with the contract, which expressly stated that loans would be made only when the society's accumulation was sufficient, thus having knowledge of the incorrectness or falsity of the agent's statement before she acted upon it, had no ground for an action for damages against the society for the agent's alleged fraud, as she could not be said to have been deceived.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. §§ 17, 18; Dec. Dig. ⊂⊐20.]

2. BUILDING AND LOAN ASSOCIATIONS ⊂⊐ 26—RESCISSION OF CONTRACT—FRAUD.

Such suit, if treated as a suit to rescind the contract and to recover the money paid under it, could not be maintained, as plaintiff could not be said to have been actually misled by the statement or opinion of the agent into accepting the contract as it was written.

[Ed. Note.—For other cases, see Building and Loan Associations, Dec. Dig. ⊂⊐26.]

Appeal from Bowie County Court; Lee Tidwell, Judge.

Action by Mrs. S. E. Camp and others against the National Equitable Society of Belton. Judgment for plaintiffs, and defendant appeals. Reversed, and judgment rendered for the defendant.

The appellee brought the suit to recover the amount of money paid to appellant society in virtue of a certain contract executed by it, averring that she was induced to apply for and enter into the contract through fraudulent statements made to her by the agent of the society and relied on by her. The fraudulent statements which induced her to apply for the contract are, as alleged:

"The agent stated to her if she would buy a contract of them [appellant] and pay them [appellant] $10.00 and then make ten monthly payments to the society, they would loan her a $1,000.00; or if she would pay to the society the $100.00 in advance, that the society would loan her a $1,000.00 in July, which would be in about four months."

The prayer was:

"Wherefore plaintiff prays that the defendant society be cited to answer this complaint, and that plaintiff have judgment against defendant society requiring said society to refund back to plaintiff the $110 that she paid said society for the contract bought of said society, with interest and costs of suit, and for general and special relief as she may be entitled to in both law and equity."

The application for and the contract executed and received by appellees are fully set out in the companion case of National Equi-

table Society of Belton v. J. W. Carpenter, 184 S. W. 585, lately decided by this court. The evidence on the part of the appellee shows that the agent of the society came to her and solicited her to make application to the society for a loan contract with the society for $1,000. Her testimony is as follows:

"I wanted the money with which to build me a house, and I asked the agent when I could get the money and he said that I could get it when I paid into the society $100, paying $10 each month. I told the agent that if I could not get the loan right away I would not want the contract; he said that he did not know about that. He then told me that if I would pay to the society $100 in cash I could get a loan within 30 days and not over 60 days at the outside. I told the agent that if I could get the loan within that time I would take the contract, and this statement by the agent was the inducement that caused me to take the contract; otherwise I would not have taken it. * * * I saw the agent several times before I made application for a loan contract, and several times before I made any trade with him. He left a loan contract with me for me to read and I read it and studied its terms. I read both the application and the loan contract before I signed them, and knew that they contained statements which said that the agent had no authority to change the terms of the written contract or make any oral agreement that was not in the written contract. Before signing the application for a loan and the loan contract I discussed the terms of the loan contract with my son-in-law, who read the application and the loan contract before I signed them. * * * I paid the agent $10 and he gave me a receipt for it. I sent the society $100. When the time came for me to get a loan, according to the agent's promise, I wrote the society to know why I had not received a loan on my application previously made therefor, and it wrote me that they could not make me a loan then, but that it would get to it as soon as it could. * * * I have not received a loan from the society nor any of my money back that I paid in."

The written application to the society for the loan, signed by appellee, recites:

"I have examined the plans of the society and have read a printed copy of your contract and am familiar with and understand and accept all the covenants and requirements of said contract, and I make this application expressly and solely upon the terms and conditions of this application, and the covenants and requirements of said contract issued by the society, and not upon the faith of any statement, promise, undertaking or guarantee on the part of said solicitor or of any other person."

The written loan contract subsequently executed by the society and accepted by appellee, has the following stipulation respecting the time when a loan will be made:

"The society, whenever the accumulation is sufficient, will lend the holder hereof, at the rate of interest hereinafter provided, and repayable in the manner and form, and as and when, as is hereinafter stipulated, the sum of one thousand dollars only on lawful, good and sufficient real estate security, legally and mortgageable by the holder hereof for said loan: Provided, that prior to the making of said loan said the holder hereof shall have made at least ten of the stipulated monthly payments, which may be done in advance if desired by the said the holder hereof."

And the contract of loan has the following clause:

---

"The society shall be bound by and responsible for only such statements as are contained in this contract and the application therefor, and no officer or agent or solicitor of this society, general or special, or state agent, has any authority to promise a loan in any particular time or bind the society by any promises, representations or any statements not contained in this contract or in the application therefor."

In a trial before the court judgment was entered for appellee for the money paid the society.

L. H. Henry, of Texarkana, for appellant. J. W. Hillman, of Texarkana, for appellees.

LEVY, J. (after stating the facts as above). [1] Appellee in the brief remarks that:

"The suit is brought for the purpose only to recover back the money paid by the plaintiff to the society, based upon the fraudulent statements made by the agent of the society to induce plaintiff to enter into the contract and pay to the society the $100 in cash."

And it is believed that under the facts of the case it must be held that there is no ground furnished to entitle appellee to the relief sought. Appellee, according to her evidence, before signing the application and before accepting the loan contract, read over "and studied its terms," and "knew that they contained statements which said that the agent had no authority to change the terms of the written contract or make any oral agreement that was not in the written contract." Further, she discussed, she said, the terms of the contract with her son-in-law before signing the contract. Having read the contract and "studied its terms," before applying for and before accepting the contract, the appellee would be held to know that it expressly stated that the agent or solicitor had not "any authority to promise a loan in any particular time." And with this information afforded appellee, she would fully know that the statement of the solicitor that she "could get a loan within 30 days and not over 60 days at the outside" was not authorized if it conflicted with or varied the stipulation in the loan contract, which, according to her testimony, was left "with me for me to read" before acceptance and signing. Referring to the contract itself that was intended to be offered she would know that its terms explicitly stated that the loan would be made only out of the loan reserve fund of the society "whenever the accumulation is sufficient." So, from the evidence, appellee is in no position to say that she entered into and accepted the loan contract upon the faith and trust which she reposed in the statement of the agent soliciting the application for the contract. Therefore, as the appellee had, as conclusively appears, knowledge of the incorrectness or falsity of the statement of the agent, which was promissory in its nature, before she acted upon it, she has no ground for an action for damages against appellant for the agent's al-leged fraud, for she cannot be said to be deceived. 1 Clark & Skyles on Agency, § 509.

[2] And treating the action as one to rescind the contract and recover the money paid under it, the appellee may not maintain such suit under the facts, for she could not be said to have been actually misled by the statement or opinion of the agent into accepting the contract as it was written. Smith on Frauds, §§ 62 and 126 at page 144; Jackson v. Stockbridge, 29 Tex. 394, 94 Am. Dec. 290. What has been said in the case of Society v. Carpenter, supra, is decisive of this case.

The judgment is reversed, and judgment will be here rendered in favor of appellant, with all costs.