## HAPGOOD et al. v. CITY NAT. BANK et al. (No. 1768.)

(Court of Civil Appeals of Texas. Amarillo. March 23, 1921. Rehearing Denied April 27, 1921.)

1. **Appeal and error ⬅═930(3)—Presumed that finding was made on issue not submitted to jury.**

In an action to cancel an oil and gas lease which was delivered by a bank in whose favor judgment was rendered, it will be presumed that the court found that the bank was not negligent; no issue as to the bank's negligence having been submitted to the jury, though the case was tried on special issues.

2. **Deeds ⬅═54—Delivery essential.**

The delivery of a deed is essential to its validity, and an undelivered deed passes no title.

3. **Deeds ⬅═56(2)—To amount to delivery deed must be placed in control of grantee with intention that it shall become operative.**

To amount to delivery a deed must not only be placed within the control of the grantee, but this must be done by the grantor with the intention that it shall become operative as a conveyance.

4. **Vendor and purchaser ⬅═239(9)—Where deed was never delivered, defense of bona fide purchase not available to purchaser from grantee.**

Where a deed was never validly delivered, it did not become operative, and, though the grantee obtained possession, one purchasing from him cannot defeat the grantor's rights on the theory of bona fide purchase.

5. **Mines and minerals ⬅═74—Assignment of lease never validly delivered held not to pass title.**

Where the owners of an oil and gas lease authorized an agent to sell the same and deposited an assignment with a bank, the title did not pass where on the dishonor of the check of the purported purchaser the owners repudiated the transaction, and so notified the bank, but the agent through false statements procured possession of the assignment and had it recorded; for there was no delivery, and the owners declined to accept payment from the agent; hence even a bona fide purchaser from the agent had no rights superior to the owners.

Appeal from District Court, Wichita County; H. F. Weldon, Judge.

Suit by E. M. Rogers and J. J. Knight, composing the firm of Rogers & Knight, against E. G. Knight, the City National Bank and others, in which M. J. Bashara and others intervened as plaintiffs and K. N. Hapgood and others were joined as defendants. From a judgment against all the defendants except the City National Bank, defendant K. N. Hapgood and others appeal. Affirmed.

Bullington, Boone, Humphrey & Hoffman, of Wichita Falls, for appellants.

Weeks, Morrow, Francis & King, of Wichita Falls, for appellees.

HALL, J. This suit was filed by E. M. Rogers and J. J. Knight, composing the firm of Rogers & Knight, against Epps G. Knight, L. B. Mitchell, R. E. L. Knight, Alex F. Weisberg, Rhodes S. Baker, and the City National Bank of Wichita Falls, Tex., alleging in substance that plaintiffs were the owners of a certain oil and gas lease, in so far as it pertained to 15 acres of land in Wichita county, a part of block 73, Red River Valley lands; that they employed the defendant Epps G. Knight to sell their lease at a minimum price of $600.00 per acre, agreeing to pay him a commission of $25 an acre, which proposition the said Epps G. Knight accepted; that thereafter the defendant Epps G. Knight represented to them that he had procured a purchaser, to wit, the defendant L. B. Mitchell, at a price of $600 an acre, whereupon plaintiffs delivered an assignment of said lease to the City National Bank of Wichita Falls, upon the agreement that the defendant L. B. Mitchell would place in said bank the sum of $2,000 in cash as a forfeit should he refuse to take the lease; that the said L. B. Mitchell placed his check for said amount, drawn on the First National Bank of Wichita Falls, in said City National Bank; that said check was turned down on account of insufficient funds, and that plaintiff withdrew their offer to assign said lease to him. Plaintiffs further allege that Epps G. Knight was not acting in good faith as their agent in making the sale, but had conspired with L. B. Mitchell to purchase said lease for himself; that the bank unlawfully delivered the assignment upon the payment of the purchase price thereof to Epps G. Knight.

The cause was transferred to the Seventy-Eighth district court of Wichita county, and on January 6, 1920, an amended petition was filed, in which M. J. Bashara, P. P. Langford, N. B. Chenault, W. W. Silk, W. T. Willis, L. R. Crowell, W. N. Maer, O. B. Mauross, J. N. Kilgore, H. A. Allen, Frank Collier, and W. F. Weeks, joined therein as interveners, alleging that they had purchased the lease from the plaintiffs Rogers & Knight, pending the suit, in which amended petition plaintiffs and interveners also sued A. O. Parks, R. J. Brown, and K. N. Hapgood, together with the other above-

⬅═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

named defendants, alleging substantially the facts as set up in the original petition, and further that Epps G. Knight was the uncle of J. J. Knight, and was spending the larger part of his time in the oil fields of Wichita county, Tex., and was familiar with values in said county; that Rogers & Knight had placed great reliance in Epps G. Knight and procured him to act as their agent in the sale of said 15 acres of land, relying on his statement with respect to its value, said transaction being at Fort Worth on or about the 23d day of January, 1919; that the 15-acre lease was not in proven territory, and that its value was dependent upon surrounding developments; that Epps G. Knight conceived the scheme of defrauding Rogers & Knight out of said lease and informed them that he had sold the same to one L. B. Mitchell for $600 per acre, and requested plaintiffs to send the assignment to the City National Bank of Wichita Falls, and the $2,000 would be deposited by Mitchell in said bank in escrow, to guarantee his purchase, he to have 10 days in which to examine the title; that as a matter of fact that said Epps G. Knight was purchasing for himself, and said Mitchell had no interest in the property, all of which was withheld from Rogers & Knight; that the object and purpose was to give Epps G. Knight an opportunity to speculate on said lease, and the 10 days prescribed for examination of title was for such purpose; that the said Epps G. Knight procured a check from L. B. Mitchell for $2,000, knowing that the check was worthless, and caused said check, instead of the money, to be placed in escrow, this transaction taking place about the 20th day of January, 1919; that, in compliance with the request of Epps G. Knight, Rogers & Knight prepared an assignment to L. B. Mitchell for a consideration of $600 an acre, and sent the same along with a letter to the said bank, authorizing the bank to hold the assignment not exceeding 10 days from January 28, 1919, and to deliver it to L. B. Mitchell upon his payment of the $9,000 purchase price; that on January 29 the bank acknowledged receipt of the assignment and the letter from Rogers & Knight, which had been delivered to them in person by Epps G. Knight, and stated that it was clearing the $2,000 check; on January 30 it notified Rogers & Knight that payment of the $2,000 check had been refused, which notice reached Rogers & Knight at Fort Worth on January 31, 1919; that immediately upon receipt of said notice Rogers & Knight notified the bank by wire to return the papers, canceling the transaction, and subsequently confirmed the wire by letters and telephone communication; that Epps G. Knight learned of these requests on the part of Rogers & Knight to return the papers and upon the representa-

tion that he desired to procure the assignment for the purpose of having it examined by his attorney, made to R. E. Shepherd, cashier of said bank, induced the said Shepherd to permit him to take the assignment out; that, instead of returning the assignment, he placed the same of record and returned and gave Shepherd his own check for $9,000; that when Rogers & Knight learned of this transaction they immediately repudiated the same and demanded that the bank straighten the matter out; that they never accepted the $9,000 and did all in their power to get it returned; that thereafter the said Epps G. Knight purported to contract the sale of the property to one Rinker, said transaction being had some two or three weeks thereafter, and that Rinker filed his suit for the property on or about the 20th day of February, 1919; that Epps G. Knight made a transfer of the property to Weisberg, Baker and R. E. L. Knight; that Rogers & Knight did all in their power to get the matter straightened out and were finally forced to file suit.

For cause of action against Parks, Hapgood, and Brown, plaintiff alleged in substance that they had contracted to purchase the property from Baker, Weisberg, and R. E. L. Knight, but that they had full knowledge of all the claims of Rogers & Knight as to the invalidity of the pretended conveyance from Rogers & Knight to L. B. Mitchell, who had in turn conveyed to Epps G. Knight, and who in turn conveyed to Baker, Weisberg, and R. E. L. Knight; that said Parks, Hapgood, and Brown had never in fact consummated the contract even at the time of the trial, but under some agreement between themselves and Epps G. Knight had withdrawn their money and were making a common fight with Epps G. Knight; that said Parks, Hapgood and Brown, even if they had parted with money, could not be innocent purchasers, for the reason that the assignment had never been delivered, standing on the same footing as a forged assignment, under which a claim of bona fide purchaser could not be made. Defendant Epps G. Knight answered by general denial and in substance that Rogers & Knight and the other plaintiffs who claimed under them were estopped and had ratified the transaction in that the value of the lease was fluctuating, and that they had remained inactive, waiting for the lease to rise or fall in value until they should determine whether to take the $9,000, or whether to disaffirm the contract and seek to cancel the lease, thereby placing the said Epps G. Knight in an attitude where he did not know which way to turn; that he relied upon the inactivity of said Rogers & Knight and entered into a contract to sell the property to other parties who were seeking to recover damages from him, and that it would be in-

equitable and unconscionable to permit Rogers & Knight, after the lapse of time and after they had so conducted themselves, to assert any claim to the property. The defendants Parks, Hapgood, and Brown claim to have purchased the property without knowledge of the rights of Rogers & Knight, and to have paid at least $20,000 of the total consideration, amounting to $30,000, and that the said Rogers & Knight should not be permitted to assert any invalidity in the assignment or its delivery, in that they had negligently permitted the same to remain of record during the time the lease was fluctuating in value, and did thereafter permit other people to deal with the property as belonging to Baker, Weisberg, and R. E. L. Knight, and that Rogers & Knight had ratified the transaction between the City National Bank and Epps G. Knight.

The cause was submitted to a jury on certain charges and special issues. The charges and issues to which answers were required, in the manner of their submission, and the answers of the jury are as follows:

"No. 1: Find whether or not J. J. Knight and E. M. Rogers, when they learned that Epps G. Knight had taken the assignment made by them to L. B. Mitchell of the 15 acres of land in controversy out of the City National Bank, and left his, Epps G. Knight's, check for $9,000, promptly repudiated said transaction. Answer: Yes.

"Charge No. 1: An agent is one who acts for and instead of another by and with authority of the other person.

"No. 2: Remembering the foregoing charge No. 1 on agency, find whether or not at the time that the defendant Epps G. Knight came to Wichita Falls from the office of J. J. Knight and E. M. Rogers, in the city of Fort Worth, Tex., and placed the lease for the 15 acres in controversy for sale with the two real estate brokers, Huey & Cotton and Smith, Albin & Peay, the said Epps G. Knight was at that time representing and acting as the agent of J. J. Knight and E. M. Rogers in his efforts to sell said property. Answer: Yes.

"No. 3: At the time the defendant Epps G. Knight obtained the assignment of 15-acre lease in controversy from the possession of R. E. Shepherd, at the City National Bank in Wichita Falls, state whether or not the said Epps G. Knight promised and represented to the said R. E. Shepherd that he, the said Epps G. Knight, wanted said assignment for the purpose of making a copy of same to be examined by his attorney, and that he would return the same to the possession of said R. E. Shepherd. Answer if you find the facts to be. Answer: Promised to bring it back.

"No. 4: State whether or not defendant Epps G. Knight purposely concealed from plaintiffs J. J. Knight and E. M. Rogers the fact that he was buying said lease at the time they executed said lease and the said Epps G. Knight secured possession of same from the bank. Answer: Yes.

"No. 5: Did James E. Gresham, on or about February 17, 1919, with the authority and on behalf of said Epps G. Knight, ask E. M. Rogers over the telephone if he (Rogers) would agree to let Epps G. Knight take down the $9,000 on deposit in the City National Bank and return this lease or assignment to Rogers & Knight? Answer: No. * * *

"No. 8: Did J. J. Knight, on or about February 17, 1919, in the office of Linn Boyd, say to James E. Gresham in substance: 'We have no grievance against Uncle Epps. It was the bank that breached us. Why don't Uncle Epps go on with his deal?' Answer: No.

"No. 9: Did Rogers & Knight, between the time thay learned that Epps G. Knight was the purchaser of the lease in controversy and the coming in of the Burk-Waggoner well on or about the 21st day of April, 1919, do anything to rescind the transfer of the lease in controversy? Answer: Yes.

"No. 10: Did Rogers & Knight intentionally avoid taking action to rescind the transfer of the lease in controversy until they could know from developments in the vicinity of said lease whether the rescission would be profitable to them? Answer: No.

"No. 11: Did plaintiffs Rogers & Knight, with full knowledge that wells being drilled in the vicinity of the acreage in controversy would condemn said acreage or make said acreage more valuable, wait upon said developments with the purpose and intention of rescinding the transfer to L. B. Mitchell if the acreage became more valuable, or to abide by the transfer if the acreage was depreciated in value below the original purchase price named in the L. B. Mitchell assignment? Answer: No.

"No. 12: Did the plaintiffs Rogers & Knight, after learning that the defendant Epps G. Knight was the purchaser of the 15-acre lease in controversy, delay taking any steps to rescind said act by E. G. Knight, and cancel said transfer for the purpose of enabling plaintiffs to speculate upon the chance which the future might give them of deciding whether or not it would be profitable to them to abide by said purchase or rescind it? Answer: No.

"No. 13: After the plaintiffs Rogers & Knight learned that Epps G. Knight was purchaser of the lease in controversy, did they thereafter exercise diligence as that term is hereinbefore defined to secure a rescission or cancellation of said lease or assignment? Answer: Yes.

"No. 14: Did A. C. Parks, K. N. Hapgood, and R. J. Brown accept title to said 15-acre lease in controversy and pay over any sum or sums of money to Epps G. Knight, R. E. L. Knight, Rhodes S. Baker, and Alex F. Weisberg, or their agent, Hughes Knight, prior to the time that they, Hapgood, Parks, and Brown, learned of any rights or claims on the part of the plaintiffs, J. J. Knight and E. M. Rogers? (This issue is not answered.)

"No. 15: If you answer the next foregoing special issue No. 14 'yes,' then find whether or not said money so paid, if any, was placed beyond the control of the defendants Parks, Hapgood, and Brown. (This issue was not answered.)

"No. 16: Find whether or not the plaintiffs Rogers & Knight, after having learned that Epps G. Knight was the purchaser of the 15 acres in controversy, and after having learned that said lease was placed of record by the said

Epps G. Knight, delayed in the filing of a suit to cancel same or delayed in taking such action as to expunge the lease from the record until Hapgood, Brown & Parks had delivered to Epps G. Knight, R. E. L. Knight, Rhodes S. Baker, Alexander Weisberg, or their agent, W. Hughes Knight, any sum or sums of money, in payment for said lease, knowing the fact that the records of deeds in Wichita county, Tex., showed the title in Epps G. Knight, R. E. L. Knight, Alex F. Weisberg, or Rhodes S. Baker. Answer: No.

"No. 17: If you have answered the next preceding interrogatory 'Yes,' then, remembering the definition of negligence as heretofore given you, find whether or not the failure on the part of J. J. Knight and E. M. Rogers to file suit for cancellation or to take some action to expunge the said lease from the record was negligence on the part of the plaintiffs J. J. Knight and E. M. Rogers. Answer: No.

"No. 18: Find whether or not there was a written or verbal contract entered into by and between Rogers & Knight, on the one hand, and Epps G. Knight, on the other, by the terms of which Epps G. Knight agreed to act as selling agent for Rogers & Knight in the sale of the lease upon the 15 acres in controversy. (This issue is not answered.)

"No. 19: Did the interveners, A. C. Parks, K. N. Hapgood, and R. J. Brown, deliver to the National Bank of Commerce, under their contract of purchase, and thereby lose control of same the sum of $20,000, as payment in part of the purchase price of said lease, before they had knowledge or notice whatever of the rights of plaintiffs J. J. Knight and E. M. Rogers, if any, in the lease in controversy? (This issue is not answered.)

"No. 20: Find whether, after the first two payments of $10,000 each were made by A. C. Parks, the said moneys, together with the third payment of $10,000, were escrowed in the National Bank of Commerce of Wichita Falls, Tex., prior to the time that an assignment was tendered to A. C. Parks and after A. C. Parks had notice of the claim of J. J. Knight and E. M. Rogers. (This issue was not answered.)

"No. 21: Was A. C. Parks, after he received notice of the claim of J. J. Knight and E. M. Rogers, tendered back the money he had paid on the contract between himself and R. E. L. Knight et al. prior to July 18, 1919? (This issue is not answered.)

"No. 22: Did E. G. Knight inform J. J. Knight and E. M. Rogers in Fort Worth, at the time he procured them to execute the assignment to L. B. Mitchell, that $2,000 was up in the City National Bank of Wichita Falls in escrow to secure the contract? (This issue was not answered.)

"No. 23: Did the plaintiffs Rogers & Knight, with knowledge that Epps G. Knight was the purchaser of the 15 acres in controversy, and with knowledge that the assignment made to L. B. Mitchell had been delivered to him by the bank, thereafter acquiesce in and ratify the purchase of said acreage by Epps G. Knight? Answer 'Yes' or 'No.' Answer: Refused."

There was a judgment in favor of plaintiffs as against all the defendants except the bank and canceling the assignment of the lease made by Rogers & Knight.

Immediately following the twelfth issue in the court's charge is this paragraph:

"Charge No. 2: By the term 'negligence' as used herein is meant the doing of that which an ordinarily prudent man would not have done under the same or similar circumstances, or the failure to do that which an ordinarily prudent person would have done under the same or similar circumstances."

We do not find it necessary to consider all of the assignments urged by plaintiffs in error, as the determination of the controversy, in our opinion, depends upon the paramount question of whether or not the lease which Rogers & Knight sent to the bank to be delivered to Mitchell upon payment of the $9,000 was as a matter of law delivered. Mitchell testified that he did not intend to buy the lease, and merely gave his check for $2,000 at the request of Epps G. Knight. The evidence supports the finding of the jury that Knight obtained the lease from the cashier of the City National Bank, upon his promise that he wanted it for the purpose of making a copy of it to be examined by his attorney, and that he would return it to the possession of the cashier. Their further finding is that Epps G. Knight obtained the lease without any negligence on the part of Rogers & Knight.

[1] No issue was submitted to the jury as to the negligence of the bank or its cashier, Shepherd, in permitting Epps G. Knight to obtain possession of the lease, and in support of the judgment we must impute to the court a finding that the bank was not negligent.

[2-4] Judge Gaines said in Steffian et al. v. Milmo National Bank, 69 Tex. 518, 6 S. W. 824:

"It is elementary law that the delivery of a deed is requisite to its validity as a conveyance. To take effect, it is quite as necessary that it should be delivered as that it should be signed. To complete a delivery in its legal sense, two elements are also essential. The instrument must not only be placed within the control of the grantee, but this must be done by the grantor with the intention that it shall become operative as a conveyance. It follows from these first principles that an instrument which passes into the possession of the grantee, without such intention on part of the grantor, is wholly inoperative, and that a purchaser from the former acquires in law no title to the property which it purports to convey. It is accordingly held that even a vendee from the grantee, who has paid value without knowledge of the facts, is not an innocent purchaser in such a case. [Citing authorities.] The courts say that a deed delivered without the consent of the grantor is of no more effect to pass title than if it were a forgery. Henry v. Carson, 96 Ind. 412; Hadlock v. Hadlock, 22 Ill. 384. We conclude, therefore, that the court was in error in holding appellee a bona fide purchaser for a valuable consideration without notice. It does not follow, how-

ever, that appellee may not make out a case entitling it to judgment, although no effective delivery of the deed is shown. But in order to do this he must bring himself within the rules applicable to an equitable estoppel, and must show that appellant's testator was grossly negligent in permitting the deed to pass into the possession of Hunt, and also that, as a result of this, some substantial injury has accrued to the bank by reason of the transaction which it entered into upon the faith of the deed."

[5] This case has been cited with approval several times both by the Supreme Court and the Courts of Civil Appeals. The trial judge's findings of fact in the Steffian Case show that Steffian placed the deed to Hunt in the latter's possession upon representation of Hunt to Steffian that Hunt wanted the same for the purpose of copying the field notes therein described. Upon the facts the instant case is stronger than the Steffian Case. Here it appears that Epps G. Knight, who was the agent of Rogers & Knight, was actually buying the land for himself, without the knowledge of his principals, and the lease so obtained by him was executed to Mitchell as grantee. The evidence shows that as soon as Rogers & Knight learned that Mitchell's check for $2,000 had been dishonored and it became known to them that Epps G. Knight had obtained possession of the lease, they wired, phoned, and wrote the bank in an effort to recall the lease and repudiate the transaction, and also within a reasonable time instituted this suit. According to Judge Gaines, they must have been grossly negligent in their efforts to recover their lease, and the evidence in this case supports the finding of the jury that they were not guilty of negligence in any degree. While a number of issues submitted to the jury in behalf of plaintiff in error, if answered favorably to plaintiff in error, might have shown that their plea of estoppel was good, such findings would have flatly contradicted the findings upon the issues referred to above. The issues which were answered by the jury fully settled these material contentions in the case, and the failure to answer other issues which, taken together, present the same questions, is not reversible error. If the lease had never in law been delivered, and Rogers & Knight were not guilty of gross negligence, it becomes an immaterial inquiry whether plaintiffs in error paid any money to Epps G. Knight, R. E. L. Knight, or any other party for the lease. If Rogers & Knight were not negligent in instituting the suit to cancel the record of the lease, it is immaterial whether the money which plaintiff in error paid for the lease passed beyond their control, and that without notice of the facts attending the execution and delivery of the instrument. Holding this view of the controversy, we deem it unnecessary to consider any other question presented, and the judgment is affirmed.