### MOONEYHAM et al. v. CORNICK.
### (No. 11701.)

Court of Civil Appeals of Texas. Fort Worth.
Feb. 26, 1927.

Rehearing Denied April 2, 1927.

**1. Vendor and purchaser ⊚⟺239(9)—Plea of innocent purchaser may be based on deed procured by fraud.**

Deed, in fact executed by purported grantor, may serve as basis for plea of innocent purchaser from grantee, though execution was procured by latter's fraud, on account of which grantor may be awarded rescission and cancellation as against grantee.

**2. Contracts ⊚⟺93(2)—Deeds ⊚⟺69—Execution of deed or contract without knowledge of legal effect or intent to be bound does not authorize rescission without proof of mutual mistake or fraud.**

Execution of deed or written contract, in ignorance of its legal effect, and without intention to be bound thereby, is not a sufficient showing for rescission, even as against other party thereto, in absence of proof of mutual mistake or latter's fraud inducing execution, and grantee himself can invoke such rule.

**3. Pleading ⊚⟺291(1) — Settlement contract and offer of amount held admissible, without proof of attorneys' authority from plaintiff to execute instrument, in absence of verified plea of non est factum.**

In absence of verified plea of non est factum, written contract of settlement and offer to pay amount stipulated therein was admissible, in action to recover land and cancel sale contract and deeds for fraud, without proof of authority from plaintiff to his attorneys to' execute such instrument.

**4. Vendor and purchaser ⊚⟺245—Whether defendant was innocent purchaser held for jury in suit to cancel deeds for fraud.**

Refusal to instruct verdict for defendant on plea of innocent purchaser, in action to recover land and cancel sale contract and deeds for fraud, held not error, it being within jury's exclusive province to judge credibility of witnesses testifying in support of plea, and to consider all circumstances in evidence, including recited consideration in deeds, of which defendant had both actual and constructive notice.

**5. Vendor and purchaser ⊚⟺239(9)—Mortgage of innocent purchaser without notice of fraud on mortgagor's grantor is valid independently of latter's negligence or estoppel.**

Mortgage of innocent purchaser in good faith, without notice of fraud on mortgagor's grantor, is valid and binding independently of grantor's negligence and question of estoppel.

**6. Cancellation of instruments ⊚⟺58—Damages for fraud and rental value of land while in grantee's possession may be recovered in suit to cancel deeds.**

Damages for fraud, inducing execution of sale contract and deeds, and rental value of land during grantee's possession thereof, may be awarded in suit to cancel deeds, under rule favoring settlement of entire controversy in same suit.

Appeal from District Court, Wise County; F. O. McKinsey, Judge.

Suit by P. F. Cornick against R. A. Mooneyham and others. Judgment for plaintiff, and certain defendants appeal. Reversed and remanded.

McMurray & Gettys, of Decatur, and Dabney, Goggans & Ritchie, of Dallas, for appellants.

Callaway, Dalton & Callaway, of Dallas, for appellee.

DUNKLIN, J. On April 17, 1923, P. F. Cornick and Sam Klugman entered into a written contract, by the terms of which Cornick agreed to convey to Klugman by warranty deed a tract of 115 acres of land situated in Wise county, specifically described by metes and bounds in the contract. In consideration of that contract, Klugman agreed to convey to Cornick "400 acres of land in Hot Springs county in the state of Arkansas"; no other description being given. On the same day and at the same time Cornick executed to R. A. Mooneyham, by warranty deed, the same tract of land situated in Wise county and described in the contract above mentioned. The consideration expressed in that deed was "$1 cash in hand, and the conveyance of 400 acres of land in Hot Springs county, Ark."; no other description of the Arkansas land being given. That deed was duly acknowledged before a notary public in Montgomery county, Kan., where both the contract and the deed were executed. On

⊚⟺For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

April 23, 1923, Mooneyham filed the deed so made to him in the deed records of Wise county, Tex., where the 115 acres of land was located. On June 10, 1924, Cornick executed another deed with warranty of title to Mooneyham, conveying the same 115 acres. That deed contained the following recital as a consideration:

"For and in consideration of the sum of $250.00 to me paid by R. A. Mooneyham in cash and land, all of which was fully paid and delivered and this deed is made for the purpose of showing true consideration and to correct and complete the deed made by me to R. A. Mooneyham, as shown of record in volume 104, page 513 of the deed records of Wise county, Tex."

That deed purports to be made in the state of Kansas, county of Elk, and was duly acknowledged by Cornick. That deed was filed for record with the county clerk of Wise county, Tex., on June 10, 1924, and duly recorded. On June 21, 1924, Mooneyham and wife executed a deed of trust upon the same land to F. O. Ketcham, trustee, to secure the payment of a promissory note for the principal sum of $2,000, signed by Mooneyham and wife, payable to the order of the Realty Trust Company, having its principal place of business in the city of Dallas, Tex. On the same day, to wit, June 21, 1924, Mooneyham and wife executed a second deed of trust to F. O. Ketcham, trustee, on the same land, to secure the Realty Trust Company in the payment of eleven other promissory notes, the first for $21.10, due January 21, 1925, and ten in the sum of $40, each due and payable respectively on the 1st day of January each year, beginning with the year 1926 and ending in the year 1935. Those two deeds of trust were duly acknowledged by Mooneyham and wife, and filed for record in the deed records of Wise county on July 8, 1924.

P. F. Cornick instituted this suit against R. A. Mooneyham, Sam Klugman, and the Realty Trust Company in trespass to try title to recover said land, and also to cancel all of the foregoing instruments, on the ground that his execution of the first three instruments, to wit, the contract of sale to Klugman and the two deeds to Mooneyham, were procured by fraud practiced upon him by Mooneyham and Klugman, and that "said deeds of trust are entirely void as to him (plaintiff), both being based upon said forged deeds or purported deeds to the said Mooneyham, and as to the plaintiff are simulated and fraudulent, and in all things subject to the plaintiff's right in said land, and should be canceled and held for naught."

Plaintiff also sought a recovery from Mooneyham for both actual and exemplary damages for the fraud so practiced.

Klugman filed a disclaimer of any title to the property sued for. Mooneyham filed an answer, consisting of general and special exceptions to the plaintiff's petition, a general denial, a plea of not guilty of the wrongs charged in plaintiff's petition. He also specially pleaded the binding effect of the second deed executed by plaintiff for a consideration of $250, which he says plaintiff agreed to accept in the form of defendant's promissory note, which defendant is now ready and offers to pay. Mooneyham further alleged that, after the present suit was instituted, a contract in writing for the settlement of plaintiff's cause of action was signed and executed by plaintiff, acting through his duly authorized attorneys of record, who also executed the same in their own right to bind the half interest in the land which plaintiff had agreed to convey to them for their services as such attorneys in this suit; that the contract was also executed by Mooneyham and by the Realty Trust Company through its duly authorized agent, and by the terms of which contract plaintiff agreed to quitclaim and convey to Mooneyham all his interest in the land in controversy, and that judgment might be entered in behalf of Mooneyham against the plaintiff for that land, and Mooneyham agreed to pay to plaintiff the sum of $500, of which amount $250 was to be in satisfaction of the note in that sum executed by Mooneyham to Cornick in consideration of the second deed executed by plaintiff to Mooneyham, set out above, and the remaining $250 of the $500 mentioned being the consideration for the release of Cornick of any further claim upon the land. Mooneyham further alleged that the plaintiff had refused to comply with his said contract of settlement, although Mooneyham had tendered him the $500 mentioned; and Mooneyham's answer further pleaded the same tender into court for plaintiff's benefit.

To that plea of accord and satisfaction the plaintiff filed a general denial, but did not file a verified plea of non est factum, nor of failure of consideration.

The defendant Realty Trust Company also pleaded the contract of settlement, which was pleaded by Mooneyham, and further pleaded that it made the loans to Mooneyham shown by the two deeds of trust in good faith for a valuable consideration and without notice of any vice in the legal title to the land, which was at that time vested in Mooneyham according to the deed records of Wise county.

The plaintiff's petition is replete with allegations to the general effect that he had been swindled and cheated out of the land in controversy by Mooneyham and Klugman, who had conspired together for that purpose, and who had induced him to execute and deliver the contract and deeds without the payment of any consideration whatsoever therefor. We shall not undertake to set out those allegations in full, as we think it sufficient to

refer to them in a general way. According to those allegations, at the time plaintiff executed the three instruments set out above, plaintiff was living in the town of Oak Valley, Kan.; that he was a bachelor, living alone; some 64 years of age; was a farmer by occupation, and had had little experience in business transactions, generally speaking, and especially of contracts and deeds to land; feeble in health and mind; of a trusting disposition and temperament, which rendered him an easy prey to swindlers and cheats. According to further allegations in the petition, about 10 days prior to the execution of the two first instruments, the defendant Klugman came to plaintiff's home, and sold him some oil stock for a cash consideration of $1,500, and on the day those instruments were executed he and Mooneyham both came to plaintiff's home. Klugman then introduced Mooneyham to plaintiff; both Klugman and Mooneyham representing to plaintiff that Mooneyham was an experienced and high-class lawyer, living in Carthage, Mo., and also engaged in the business of buying and selling oil lands and leases and oil stock. After talking to plaintiff in his home, and ascertaining from him that he owned the land in controversy, they represented to the plaintiff that they owned a tract of cut-over timber land in Hot Springs county, Ark., worth $5 per acre under ordinary circumstances, but that they had been offered $15 per acre for a 5-year oil lease upon the land. They exhibited to plaintiff a map showing that the land was surrounded by producing oil wells located about one to two miles distant, and offered to convey to plaintiff 400 acres of that land in exchange to plaintiff for the land in controversy. They further offered to sell an oil lease on the 400 acres for plaintiff's account, and, after so doing, they would turn over to the plaintiff the $6,000 realized therefrom, and also execute to him a deed of conveyance to the title to the 400 acres. They further proposed and agreed to furnish plaintiff an abstract of title to the 400 acres. Plaintiff relied on all the representations so made, and orally consented to the exchange. Thereupon, and on the same day, Mooneyham and Klugman carried the plaintiff, in Mooneyham's car, to Independence, Kan., where the contract and deed, of date April 17, 1923, were both drawn up by Mooneyham, or under his direction, and were both executed by the plaintiff under representation then made to plaintiff by Mooneyham and Klugman that those instruments were merely contracts drawn in accordance with their parol agreement, and that neither of them were in fact deeds of conveyance to the property.

According to further allegations in the petition, Mooneyham and Klugman represented that the two instruments executed by plaintiff were copies of each other, and they left with plaintiff what they represented to be a carbon copy, which is the same as that set out above, and purporting to be a contract between plaintiff and the defendant Klugman. Plaintiff, being old and infirm, and unable to read without his glasses, did not read them, and signed the papers, relying upon Mooneyham's assurance that the papers were in proper form and embodied the terms of the parol agreement theretofore made by the parties. Immediately after Mooneyham had procured the deed of conveyance to him, he left plaintiff, taking the deed with him, and later filed it for record in Wise county. Neither Klugman nor Mooneyham ever furnished plaintiff with an abstract of the 400 acres of land in Hot Springs county, Ark.; never tendered to him a deed thereto; never paid or offered to pay plaintiff one cent of consideration for the execution of the two first instruments; nor have they ever paid to plaintiff any consideration for the land, except that, when Mooneyham persuaded plaintiff to execute the second deed of conveyance, he proposed to pay him a cash consideration of $250, but, instead of so doing, he delivered to plaintiff his promissory note for that sum, which according to plaintiff's testimony, he later failed and refused to pay until he made a tender of payment in part consideration for the contract of accord and satisfaction pleaded by him in the case.

Although not specially pleaded, according to testimony of plaintiff, within about two months after he executed the first deed to Mooneyham, Klugman and Mooneyham again visited him at his home, and procured from him a $1,000 capper's bond," upon the pretext that Klugman wanted the money to defray expenses to New York City, where he expected to sell the 400 acres, which Klugman agreed to convey to plaintiff along with other lands owned by Klugman, and that he would be able to make the sale at a price of $30 per acre. No account has ever been made to plaintiff of the proceeds of that bond. Mooneyham in his testimony denied any participation in that transaction, although he did not deny his visit with Klugman to plaintiff's residence on that occasion.

The evidence overwhelmingly and well-nigh conclusively established the truth of the allegations in plaintiff's petition, to the effect that Mooneyham and Klugman conspired and acted together in the transaction, and took advantage of plaintiff's ignorance, inexperience, and mental and physical weakness, and of his confidence in them, and, by means of fraudulent misrepresentations of facts and fraudulent promises made with no intention to perform, defrauded and swindled plaintiff out of his land, which the evidence showed was reasonably worth approximately $5,000, without paying plaintiff any consideration therefor whatsoever. It will be noted that plaintiff's written contract to

convey to Klugman the land describes it by metes and bounds, and in every other manner sufficient to make the description legally sufficient, while the description of the 400 acres which Klugman agreed to convey to plaintiff is wholly insufficient to identify any land whatever, and Klugman's agreement to convey could not be specifically enforced under any circumstances. The evidence further showed that neither Mooneyham nor Klugman ever offered to make such a conveyance to plaintiff, nor did they offer any abstract of title, as the testimony showed they had agreed to do.

The testimony of plaintiff further showed that, in order to induce him to execute the second deed, Mooneyham represented to plaintiff that he was then about to sell an oil lease on the land in Arkansas, and would very shortly have $6,000 to turn over to plaintiff therefor, together with an abstract of title and deed to the Arkansas land, and that he needed the second deed from plaintiff in order to consolidate some loans he had procured on the land in controversy. At that time Mooneyham represented that he was willing to pay plaintiff a cash consideration of $250, but, when the deed was executed, he gave plaintiff his note in lieu of the cash, which he never thereafter paid, and the evidence tends strongly to show that he never intended to pay.

According to further testimony by plaintiff, at the time the first instruments were executed, he had been suffering from an attack of partial paralysis, which seriously affected his limbs and eyes and his mental condition and the condition of his general health.

Mooneyham testified that he was about 56 years of age, and had resided in Carthage, Mo., for 22 years; that he was a practicing attorney at law, with 30 years' expérience in the practice; and that he drew up the first deed to himself and also the contract between plaintiff and Klugman, copied above, which, as noted already, failed to give a sufficient description of the Arkansas land which Klugman proposed to convey to the plaintiff. The only explanation offered by him for having plaintiff execute to him a deed at the same time plaintiff executed the contract to convey to Klugman was that Klugman owed him $3,000, which he proposed to pay with the land he was getting from the plaintiff, and they decided to have the deed made direct to Mooneyham instead of to Klugman, because Klugman was a Russian Jew, who had not taken out naturalization papers, and that both feared he might not be permitted to own land in Texas. Klugman did not testify in the case at all.

The following were the issues submitted to the jury with their findings thereon:

"No. 1. At the time the plaintiff, P. F. Cornick, signed and acknowledged the deed at the hotel in Independence, Kan., was it then and there understood and agreed by P. F. Cornick that he was to convey, and was then and there conveying, by warranty deed his 115 acres in Wise county? A. No.

"No. 2. At the time plaintiff, P. F. Cornick, signed the deed dated April 17, 1923, did he know and understand that he was signing a deed conveying his 115 acres of land in Wise county to the defendant R. A. Mooneyham? A. No.

"No. 3. At the time the plaintiff, P. F. Cornick, signed the deed dated June 10, 1924, was it then and there understood and agreed by and between both the plaintiff and R. A. Mooneyham that the plaintiff would make and deliver to R. A. Mooneyham a deed to confirm in R. A. Mooneyham the title to the 115 acres of land in Wise county? A. No.

"No. 4. At the time P. F. Cornick signed the deed referred to in the preceding issue did he know that he was signing a deed conveying to or confirming in R. A. Mooneyham title to the 115 acres of land in Wise county? A. No.

"No. 5. If you have answered issue No. 2 in the negative, that is, to the effect that P. F. Cornick did not know he was signing a deed at the time therein asked about, did the defendant R. A. Mooneyham procure or assist in procuring the said P. F. Cornick to so sign said deed? A. Yes.

"No. 6. If you have answered issue No. 3 and also issue No. 4 in the negative, and issue No. 5 in the affirmative, then did the defendant R. A. Mooneyham procure or assist in procuring both said deeds willfully and fraudulently for the purpose of depriving the plaintiff, P. F. Cornick, of his Wise county land without adequate consideration? A. Yes.

"No. 7. If you have answered issue No. 6 in the affirmative, then you may, in your discretion, and if you so desire, award plaintiff punitive damages; that is, damages in the way of punishment, against the defendant R. A. Mooneyham and in favor of the plaintiff, P. F. Cornick, and, if you award such punitive damages, then state the amount of such damages so awarded, if any, as your answer to this issue. A. $1,000. * * *

"Special issue. What was and is the reasonable rental value of the 115 acres of land in controversy from the 15th day of April, 1923, to this date? Answer in dollars and cents, if any you find. A. $690."

The trial court rendered judgment in favor of the plaintiff against all the defendants for title to the land in controversy and canceling the two deeds executed by plaintiff to Mooneyham and the two deeds of trust executed by Mooneyham to the defendant Realty Trust Company. Judgment was also rendered in plaintiff's favor against Mooneyham for $1,690 damages. Mooneyham and the Realty Trust Company have appealed.

[1, 2] Counsel for appellee, Cornick, has cited such decisions as Steffian v. Milmo National Bank, 69 Tex. 518, 6 S. W. 823, Neal v. Pickett (Tex. Civ. App.) 269 S. W. 160, and Hapgood v. City National Bank (Tex. Civ. App.) 230 S. W. 775, to support their contention that, if Cornick signed the deeds in controversy without knowing their contents, and without intending to convey the land, and if

he was fraudulently induced by Mooneyham and Klugman so to do, then the deeds were. absolutely void and insufficient to serve as a basis for the plea of innocent purchaser filed by the Realty Trust Company. We are unable to concur in that contention. The authorities cited do hold that a forged deed will not support such a plea because the same is no conveyance at all, but an absolute nullity. We believe it well settled by the authorities that, if a deed is in fact executed by the purported grantor, it may serve as a basis for a plea of innocent purchaser from the grantee, even though the execution of it was procured by fraud on the part of the grantee, and on account of which fraud the grantor may be awarded a rescission and cancellation as between him and the grantee alone. Gibson v. Brown (Tex. Civ. App.) 24 S. W. 575; Coughran v. Alderete (Tex. Civ. App.) 26 S. W. 111, and authorities there cited. It is also the rule that the execution of a deed or written contract, in ignorance of its legal effect, and without any intention to be bound thereby, is not a sufficient showing for a rescission, even as against the other party to the instrument, in the absence of proof showing mutual mistake of the parties or fraud practiced by the other party, which induced the execution of the instrument, and this rule can be invoked by the grantee himself. International Text Book Co. v. Lewis, 130 Mo. App. 158, 108 S. W. 1118; Texas Co. v. Keeter (Tex. Civ. App.) 219 S. W..521; Murray Co. v. Putman, 61 Tex. Civ. App. 517, 130 S. W. 632; National Equitable Soc. v. Camp (Tex. Civ. App.) 184 S. W. 589.

It will be .noted, however, that the jury also found that the execution of those deeds was procured by willful fraud on the part of Mooneyham, for which the jury assessed $1,000 as exemplary damages. As hereinafter shown, the judgment will be reversed for other reasons, and the cause remanded, but upon another trial of the cause we believe it would be better practice for the issues of fraud presented in plaintiff's petition to be submitted directly and specifically rather than in an indirect manner, as was done on the last trial.

[3] Both appellants have assigned error to the exclusion of the written contract of settlement, which was pleaded by both, together with proof that the $500 therein stipulated to be paid to the plaintiff in full settlement of the controversy was .tendered to the plaintiff through attorneys and refused. The contract of settlement appears in the bill of exception. It was signed by appellants and by the attorneys of record for the plaintiff for themselves and as attorneys for plaintiff himself, and it was in strict accord with the appellants' plea of accord and satisfaction. Plaintiff objected to that evidence as follows:

"We object to it as immaterial; we object to any conversation about it, for the reason that it is an effort to compromise, a proposition that was never consummated; no authority shown, and there was no authority to compromise on the part of Cornick."

In connection with the proof so offered, appellants also offered a written contract of employment of his attorneys of record by Cornick, which conferred upon them full powers to act as his attorneys in the prosecution of the suit, but there was no express or implied authority conferred by that document to execute the compromise agreement. The reasons assigned by the trial court for the ruling were that the agreement related to a compromise; that there was no proof that plaintiff had ever authorized it; that counsel for the Realty Trust Company who represented his client in the transaction understood that plaintiff had never agreed to the settlement; and that, when the $500 was tendered to Mr. Dalton, one of plaintiff's counsel, Mr. Dalton then stated that Cornick had refused to accept the money; and that the power of attorney which plaintiff gave his counsel authorized them to institute and prosecute the suit, but did not authorize them to compromise it without his consent.

In the absence of a verified plea of non est factum, the document and offer of payment of the $500 was admissible without proof of authority from plaintiff to his attorneys to execute the instrument and bind him by its provisions. Thomason v. Berry (Tex. Civ. App.) 276 S. W. 185; City National Bank v. Farrington (Tex. Civ. App.) 243 S. W. 544; Wade v. Wade (Tex. Civ. App.) 106 S. W. 188; McAfee v. Henry. (Tex. Civ. App.) 110 S. W. 143. Accordingly, we sustain the assignments of error now under discussion, and reverse the judgment.

[4] We overrule the contention of the Realty Trust Company, embodied in another assignment, to the effect that the court should have instructed a verdict in its favor on its plea of innocent purchaser. The jury were the exclusive judges of the credibility of the witnesses who testified in support of that plea. And it was also within their province to take into consideration all the circumstances in evidence, including the recited considerations in the two deeds executed by plaintiff to Mooneyham, of which the Realty Trust Company had notice, both actual and constructive, in determining whether or not appellant company had actual or constructive notice of facts sufficient to put a reasonably prudent person on inquiry that would have led to a discovery of the truth with respect to the transactions evidenced by the deeds.

[5] If the Realty Trust Company was an innocent purchaser in good faith and without notice of the fraud practiced upon Cornick, then as a conclusion .of law its mortgage is valid and binding, notwithstanding such fraud, independently of whether or not Cor-

nick was guilty of negligence in permitting himself to be thus swindled, and independently of the separate issue of estoppel arising out of the same facts. Pool v. Chase, 46 Tex. 207. Hence upon another trial it will not be necessary or proper to submit the issue of negligence on the part of Cornick in executing the deeds or the issue of estoppel, in addition to the defense of innocent purchaser. Manifestly this conclusion is favorable to appellant rather than adverse. Expressions in opinions cited by appellant to support the contention that those additional issues should be submitted essentially are but arguments in support of the doctrine of innocent purchaser, upon the basic principle of estoppel. Some of those authorities are Gavagan v. Bryant, 83 Ill. 376; Medlin v. Buford, 115 N. C. 260, 20 S. E. 463; Roach v. Karr, 18 Kan. 529, 26 Am. Rep. 788; Vanzant v. Bodcaw Lumber Co., 128 La. 923, 55 So. 577.

[6] We overrule the further contention by counsel for Mooneyham that damages for fraud could not be awarded in the same suit for cancellation of the two deeds. We know of no reason why the general rule which favors a settlement of the entire controversy in the same suit under our blended system of law and equity should not apply in this case, and this conclusion applies also to the recovery of the rental value of the land during the time Mooneyham has held and enjoyed the possession of it. We deem it unnecessary to discuss other assignments of error shown in the record, but, for the reasons noted already, the entire judgment will be reversed and the cause remanded for another trial.